## IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | | |
|---|---|---|
| JAMIE BORMAN, | ) | Case No. CI 19 629 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | **AND JURY DEMAND** |
| RENAISSANCE FINANCIAL | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW, the Plaintiff, by and through the undersigned counsel, and hereby files this Complaint against Renaissance Financial Corporation, and states and alleges as follows:

### INTRODUCTION

1.      This is an action under the Americans with Disabilities Act and the Nebraska Fair Employment Practice Act for the discrimination and retaliation Plaintiff Jamie Borman ("Jamie") experienced during her employment with Renaissance Financial Corporation ("Renaissance") because of her disability.

2.      This is also an action under the Nebraska Fair Employment Practice Act, the public policy of the state of Nebraska for the retaliation Jamie experienced during her employment with Renaissance because of her worker's compensation claim.

### VENUE AND JURISDICTION

3.      Plaintiff Jamie Borman is and was at all times relevant a resident of Omaha, Douglas County, Nebraska.

4.      Defendant Renaissance Financial Corporation is a Missouri Corporation doing business in Nebraska.



1

**EXHIBIT A**

#41    FILED
IN DISTRICT COURT
DOUGLAS COUNTY NEBRASKA

JAN 24 2019

JOHN M. FRIEND

5.      This court has personal jurisdiction over Defendant pursuant to Neb. Rev. Stat. § 25-536.

6.      The acts about which Jamie complains occurred in Omaha, Douglas County, Nebraska.

7.      Venue is appropriate in this court pursuant to Neb. Rev. Stat. 25-403.1 as a substantial part of the events or omissions giving rise to this claim occurred in Omaha, Douglas County, Nebraska.

## ADMINISTRATIVE REQUIREMENTS

8.      On May 21, 2018, Jamie filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") which was dualy filed with the Nebraska Equal Opportunity Commission pursuant to the work-sharing agreement between the two administrative agencies.

9.      On November 5, 2018, Jamie received her Notice of Right to Sue from the EEOC.

## FACTUAL BACKGROUND

10.      On March 31, 2008, Jamie began her employment at Renaissance as a Registered Advisor's Assistant.

11.      Part of Jamie's job responsibilities included planning and organizing events for clients of Renaissance.

12.      On July 21, 2017, Renaissance was having an event at a golf course with which Jamie was assisting.

13.      When she arrived at the event, she texted Cole Grandfield (hereinafter "Grandfield"), a financial advisor for Renaissance. Grandfield was also responsible for

2

helping Jamie set up for the event. Jamie also texted Chad Rutar (hereinafter "Rutar") her supervisor.

14. As Jamie was waiting for Grandfield to arrive to help her finish preparing for the event, she attempted to lift a case of soda and injured her back.

15. On Monday July 24, 2017, Jamie explained to Rutar she hurt her back while setting up for the event.

16. On Monday July 24, 2017 and Tuesday July 25, 2017, Jamie continued to work her normal hours. But, because of her back injury, it became uncomfortable for her to sit or stand for extended periods of time.

17. In the middle of the day on Wednesday, July 25, 2017, Jamie told Rutar that her back was continuing to bother her after the incident and that she feared something was seriously wrong so she was going to see a doctor.

18. On Thursday July 26, 2017, Jamie took time off to see her primary care physician. By the time Jamie arrived at her doctor's office she was so stiff from her back impairment she could barely walk. Jamie was given a steroid shot and prescribed muscle relaxers for her back injury.

19. When Jamie returned home from her doctor's appointment her condition worsened. She got to the point where she could not move. Jamie went to the emergency room for more medical treatment for her condition.

20. The emergency room physician would not allow Jamie to return home because she could not move and the medications they had administered intravenously did nothing to ease the pain. She was admitted to the hospital for further treatment. Upon admission Jamie's husband texted Rutar to let him know that her back condition

3

had worsened, and she was being admitted to the hospital. Rutar told him to keep him posted.

21.      After two days of hospital stay, an MRI was performed, and Jamie was diagnosed with a herniated disc. On July 28, 2017, Rutar called Jamie and she asked Rutar if he had notified the essential people of her absence and to begin a worker's compensation claim. He assured her he had.

22.      On July 30, 2017, Jamie was discharged from the hospital. She was told not to return to work until she was released by her primary care physician.

23.      Upon her discharge, Jamie was unable to walk without a walker. Her condition also substantially limited her ability to care for herself, sleep, stand, lift, and bend.

24.      A herniated disc is a dysfunction of the spine that substantially limited the operation of Jamie's musculoskeletal system.

25.      On July 31, 2017, Jamie corresponded with Terri Stillman (hereinafter "Stillman"), the human resources manager for Renaissance, about Jamie's worker's compensation claim.

26.      Jamie asked Stillman to expedite processing her paperwork so Jamie could secure the necessary authorization for medical appointments and recommended physical therapy.

27.      On August 1, 2017, Jamie received a questionnaire and medical release from Renaissance's worker's compensation carrier.

28.      On August 2, 2017, Jamie requested time off from work until August 21, 2017 for spinal injection and physical therapy. Jamie's request was approved.

29.   On August 21, 2017, Jamie returned to work part-time while also continuing physical therapy twice a week in the afternoons. When Jamie returned to work she had been moved to a different desk. Jamie's new cube was isolated from everything and was only open on one side.

30.   Upon her return, Jamie's job duties were reduced.

31.   On September 11, 2017, Jamie returned to work full time. She also requested to have a longer lunch period to attend physical therapy to not disrupt the work day.

32.   In mid-September 2017, Jamie was presented with a trip to Hawaii because of her excellent work performance. Rutar made the decision to take Jamie to Hawaii because of her performance.

33.   In September 2017, Jamie received a 5% raise.

34.   Jamie attended authorized physical therapy through November 2017 to treat her back injury.

35.   On December 28, 2107, Jamie was called into a meeting with Rutar and Cindy Vendetti (hereinafter "Vendetti"), the office manager for Renaissance. Rutar started the meeting by saying, "You are not going to like me in about three minutes." He then said to Jamie, "Today is going to be your last day."

36.   The reason Jamie was given for her termination was that the business model had changed.

37.   Jamie was given a separation agreement that said she was resigning. Jamie did not sign the separation agreement and did not resign from her position.

5

38.    On December 29, 2017, a company-wide email was sent out that said Jamie had resigned although no email had been sent out about her injury/hospital stay.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## DISABILITY DISCRIMINATION AND RETALIATION

39.    Plaintiff repleads paragraphs 1 to 38.

40.    Defendant is and was at all times material an "employer" within the meaning of the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADAAA").

41.    Plaintiff's health condition substantially interfered with the operation of her musculoskeletal system.

42.    Plaintiff's health condition substantially limited her ability to lift, walk, bend, and care for herself.

43.    Plaintiff is and was disabled within the meaning of the ADAAA.

44.    Plaintiff is and was able to perform the essential functions of her job with or without reasonable accommodation.

45.    Plaintiff requested an accommodation for her disability.

46.    Defendant discriminated against Plaintiff.

47.    Defendant retaliated against Plaintiff because of her requested reasonable accommodation.

48.    Plaintiff's disability was a motivating factor in such discrimination.

49.    Plaintiff's protected activity was a motivating factor in Defendant's retaliation and termination.

6

50.     Defendant, by its representatives' actions, willfully, maliciously, and intentionally, with reckless indifference to the rights of Plaintiff, discriminated against plaintiff in violation of the ADAAA, and by doing so are subject to punitive damages.

51.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to, mental and emotional distress; humiliation; fear; embarrassment; lost enjoyment of life; and lost wage, lost benefits, and other emoluments of employment.

WHEREFORE, Plaintiff Jamie Borman demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for appropriate equitable relief, for punitive damages, for interest as allowed by law, for attorneys' fees, for the costs of this action, and for such other relief as may be just in the circumstance and consistent with the purposes of the ADAAA.

## COUNT II
## VIOLATION OF THE NEBRASKA FAIR EMPLOYMENT PRACTICE ACT
## DISABILITY DISCRIMINATION AND RETALIATION

52.     Plaintiff repleads paragraph 1 to 51.

53.     Defendant is and was at all times material an "employer" within the meaning of the Nebraska Fair Employment Practice Act ("NFEPA").

54.     Plaintiff's health condition substantially interfered with the operation of her musculoskeletal system.

55.     Plaintiff's health condition substantially limited her ability to lift, walk, bend, and care for herself.

56.     Plaintiff is and was disabled within the meaning of the NFEPA.

57.     Plaintiff is and was able to perform the essential functions of her job with or without reasonable accommodation.

58.     Plaintiff requested an accommodation for her disability.

59.     Defendant discriminated against Plaintiff.

60.     Defendant retaliated against Plaintiff because of her requested reasonable accommodation.

61.     Plaintiff's disability was a motivating factor in such discrimination.

62.     Plaintiff's protected activity was a motivating factor in Defendant's retaliation and termination.

63.     Defendant, by its representatives' actions, willfully, maliciously, and intentionally, with reckless indifference to the rights of Plaintiff, discriminated against plaintiff in violation of the NFEPA, and by doing so are subject to punitive damages.

64.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to, mental and emotional distress; humiliation; fear; embarrassment; lost enjoyment of life; and lost wage, lost benefits, and other emoluments of employment.

WHEREFORE, Plaintiff Jamie Borman demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for appropriate equitable relief, for punitive damages, for interest as allowed by law, for attorneys' fees, for the costs of this action, and for such other relief as may be just in the circumstance and consistent with the purposes of the NFEPA.

8

## COUNT III
## VIOLATION OF THE NEBRASKA FAIR EMPLOYMENT PRACTICE ACT
## WHISTLEBLOWER RETALIATION

65.     Plaintiff repleads paragraphs 1 to 64.

66.     Defendant is and was at all time and "employer" within the meaning of the Nebraska Fair Employment Practice Act ("NFEPA")

67.     Plaintiff was injured at work in the course of performing her job duties.

68.     Plaintiff filed a worker's compensation claim for her at-work injury.

69.     Plaintiff's filing of her worker's compensation claim is a protected act under the Nebraska Workers Compensation Act.

70.     Defendant retaliated against Plaintiff for her protected activity in violation of the Nebraska Fair Employment Practice Act.

71.     Plaintiff protected activity was a motivating factor for Defendant's retaliation and Plaintiff's termination.

72.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to, mental and emotional distress; humiliation; fear; embarrassment; lost enjoyment of life; and lost wage, lost benefits, and other emoluments of employment.

WHEREFORE, Plaintiff Jamie Borman demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for appropriate equitable relief, for punitive damages, for interest as allowed by law, for attorneys' fees, for the costs of this action, and for such other relief as may be just in the circumstance and consistent with the purposes of the NFEPA.

## COUNT IV
## VIOLATION OF PUBLIC POLICY
## WORKER'S COMPENSATION RETALIATION

73.    Plaintiff hereby repleads paragraphs 1 to 72 as if fully set forth herein.

74.    Plaintiff was injured at work in the course of performing her job duties.

75.    Plaintiff filed a worker's compensation claim for her work injury.

76.    It is against the public policy of Nebraska to discriminate and retaliate against employees who file worker's compensation claims.

77.    Defendant retaliated against Plaintiff for her protected activity in violation of the Nebraska's public policy.

78.    Plaintiff's protected activity was a motivating factor for Defendant's retaliation and Plaintiff's termination.

79.    As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to, mental and emotional distress; humiliation; fear; embarrassment; lost enjoyment of life; and lost wage, lost benefits, and other emoluments of employment.

WHEREFORE, Plaintiff Jamie Borman demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for appropriate equitable relief, for punitive damages, for interest as allowed by law, for attorneys' fees, for the costs of this action, and for such other relief as may be just in the circumstance and consistent with the purposes of the public policy of Nebraska.


## JURY DEMAND

Plaintiff hereby demands a trial by jury in Douglas County, Nebraska.

Dated this 24th day of January, 2019.

JAMIE BORMAN, Plaintiff

BY:

Kelly K. Brandon, #20734
Stephanie J. Costello, #26309
Fiedler Law Firm, P.L.C.
20615 Highway 370
Gretna, NE  68028
402-316-3060
402-513-6501 (F)
kelly@employmentlawnebraska.com
stephanie@employmentlawnebraska.com

Attorneys for Plaintiff

Filed In Douglas District Court
*** EFILED ***
Case Number: D01CI190000629
Transaction ID: 0008497360
Filing Date: 04/11/2019 04:25:39 PM CDT

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | | |
|---|---|---|
| JAMIE BORMAN, | ) | No. CI 19-629 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PRAECIPE** |
| vs. | ) | |
| | ) | |
| RENAISSANCE FINANCIAL | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**TO THE CLERK OF SAID COURT:**

Please issue summons for service by Plaintiff by Certified Mail with a copy of the Amended

Complaint and Jury Demand upon:

Renaissance Financial Corporation
c/o CSC-Lawyers Incorporating Service Company
233 South 13th Street, Suite 1900
Lincoln, NE 68508

Dated this 11th day of April, 2019.

JAMIE BORMAN, Plaintiff

BY:   /s/ Kelly K. Brandon

Kelly K. Brandon, #20734
Stephanie J. Costello, #26309
Fiedler Law Firm, PLC
20615 Highway 370
Gretna, NE 68028
403-316-3060
402-513-6501 (fax)
kelly@employmentlawnebraska.com
stephanie@employmentlawnebraska.com

ATTORNEYS FOR PLAINTIFF

1

2

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI190000629
Transaction ID: 0008497198
Filing Date: 04/11/2019 04:14:51 PM CDT

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | | |
|---|---|---|
| JAMIE BORMAN, | ) | |
| | ) | Case No. CI 19-629 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **AMENDED COMPLAINT** |
| | ) | **AND JURY DEMAND** |
| RENAISSANCE FINANCIAL | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | | |

COMES NOW, the Plaintiff, by and through the undersigned counsel, and hereby files this Amended Complaint against Renaissance Financial Corporation, and states and alleges as follows:

**<u>INTRODUCTION</u>**

1.      This is an action under the Americans with Disabilities Act and the Nebraska Fair Employment Practice Act for the discrimination and retaliation Plaintiff Jamie Borman ("Jamie") experienced during her employment with Renaissance Financial Corporation ("Renaissance") because of her disability.

2.      This is also an action under the Nebraska Fair Employment Practice Act, the public policy of the state of Nebraska for the retaliation Jamie experienced during her employment with Renaissance because of her worker's compensation claim.

3.      This is also an action under the Family Medical Leave Act for Renaissance's discrimination and retaliation against Plaintiff.

1

## **VENUE AND JURISDICTION**

4.      Plaintiff Jamie Borman is and was at all times relevant a resident of Omaha, Douglas County, Nebraska.

5.      Defendant Renaissance Financial Corporation is a Missouri Corporation doing business in Nebraska.

6.      This court has personal jurisdiction over Defendant pursuant to Neb. Rev. Stat. § 25-536.

7.      The acts about which Jamie complains occurred in Omaha, Douglas County, Nebraska.

8.      Venue is appropriate in this court pursuant to Neb. Rev. Stat. 25-403.1 as a substantial part of the events or omissions giving rise to this claim occurred in Omaha, Douglas County, Nebraska.

## **ADMINISTRATIVE REQUIREMENTS**

9.      On May 21, 2018, Jamie filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") which was dually filed with the Nebraska Equal Opportunity Commission ("NEOC") pursuant to the work-sharing agreement between the two administrative agencies.

10.      On November 5, 2018, Jamie received her Notice of Right to Sue from the EEOC within ninety days of the filing of the Complaint in this matter.

11.      On January 31st, 2019, Jamie received an administrative dismissal from the NEOC.

2

**FACTUAL BACKGROUND**

12.     On March 31, 2008, Jamie began her employment at Renaissance as a Registered Advisor's Assistant.

13.     Renaissance at all relevant times employed at least fifty employees.

14.     Part of Jamie's job responsibilities included planning and organizing events for clients of Renaissance.

15.     On July 21, 2017, Renaissance had an event at a golf course with which Jamie was assisting.

16.     When she arrived at the event, she texted Cole Grandfield (hereinafter "Grandfield"), a financial advisor for Renaissance.  Grandfield was also responsible for helping Jamie set up for the event.  Jamie also texted Chad Rutar (hereinafter "Rutar") her supervisor.

17.     As Jamie was waiting for Grandfield to arrive to help her finish preparing for the event, she attempted to lift a case of soda and injured her back.

18.     On Monday July 24, 2017, Jamie explained to Rutar she hurt her back while setting up for the event.

19.     On Monday July 24, 2017 and Tuesday July 25, 2017, Jamie continued to work her normal hours.  But, because of her back injury, it became uncomfortable for her to sit or stand for extended periods of time.

20.     In the middle of the day on Wednesday, July 25, 2017, Jamie told Rutar that her back was continuing to bother her after the incident and that she feared something was seriously wrong, so she was going to see a doctor.

3

21.     On Thursday July 26, 2017, Jamie took time off to see her primary care physician.  By the time Jamie arrive at her doctor's office she was so stiff from her back impairment she could barely walk. Jamie was given a steroid shot and prescribed muscle relaxers for her back injury.

22.     When Jamie returned home from her doctor's appointment her condition worsened.  She got to the point where she could not move.  Jamie went to the emergency room for more medical treatment for her condition.

23.     The emergency room physician would not allow Jamie to return home because she could not move and the medications they had administered intravenously did nothing to ease the pain.  She was admitted to the hospital for further treatment. Upon admission Jamie's husband texted Rutar to let him know that her back condition had worsened, and she was being admitted to the hospital.  Rutar told him to keep him posted.

24.     After two days of hospital stay, an MRI was performed, and Jamie was diagnosed with a herniated disc.  On July 28, 2017, Rutar called Jamie and she asked Rutar if he had notified the essential people of her absence and to begin a worker's compensation claim. He assured her he had.

25.     On July 30, 2017, Jamie was discharged from the hospital. She was told not to return to work until she was released by her primary care physician.

26.     Upon her discharge, Jamie was unable to walk without a walker. Her condition also substantially limited her ability to care for herself, sleep, stand, lift, and bend.

27.     A herniated disc is a dysfunction of the spine that substantially limited the operation of Jamie's musculoskeletal system.

28.     On July 31, 2017, Jamie corresponded with Terri Stillman (hereinafter "Stillman"), the human resources manager for Renaissance, about Jamie's worker's compensation claim.

29.     Jamie asked Stillman to expedite processing her paperwork so Jamie could secure the necessary authorization for medical appointments and recommended physical therapy.

30.     On August 1, 2017, Jamie received a questionnaire and medical release from Renaissance's worker's compensation carrier.

31.     On August 2, 2017, Jamie requested a reasonable accommodation of unpaid leave until August 21, 2017 for a spinal injection and physical therapy.  She also requested at that her leave be protected leave under the Family Medical Leave Act ("FMLA"). Jamie's request was approved.

32.     Prior to Jamie's request for FMLA protected leave, Jamie worked at least 1,250 hours during the previous 12 months at Renaissance.

33.     On August 21, 2017, Jamie requested to return to work part-time while also continuing physical therapy twice a week in the afternoons.  When Jamie returned to work she had been moved to a different desk.  Jamie's new cube was isolated from everything and was only open on one side.

34.     Upon her return, Jamie's job duties were reduced.

35.     On September 11, 2017, Jamie returned to work full time. She also requested to have a longer lunch period to attend physical therapy to not disrupt the work day.

36.     In mid-September 2017, Jamie was presented with a trip to Hawaii because of her excellent work performance. Rutar made the decision to take Jamie to Hawaii because of her performance.

37.     In September 2017, Jamie received a 5% raise.

38.     Jamie attended authorized physical therapy through November 2017 to treat her back injury.

39.     On December 28, 2107, Jamie was called into a meeting with Rutar and Cindy Vendetti (hereinafter "Vendetti"), the office manager for Renaissance. Rutar started the meeting by saying, "You are not going to like me in about three minutes." He then said to Jamie, "Today is going to be your last day."

40.     The reason Jamie was given for her termination was that the business model had changed.

41.     Jamie was given a separation agreement that said she was resigning. Jamie did not sign the separation agreement and did not resign from her position.

42.     On December 29, 2017, a company-wide email was sent out that said Jamie had resigned although no email had been sent out about her injury/hospital stay.

<u>**COUNT I**</u>
<u>**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**</u>
<u>**DISABILITY DISCRIMINATION AND RETALIATION**</u>

43.     Plaintiff repleads paragraphs 1 to 42.

44.    Defendant is and was at all times material an "employer" within the meaning of the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADAAA").

45.    Plaintiff's health condition substantially interfered with the operation of her musculoskeletal system.

46.    Plaintiff's health condition substantially limited her ability to lift, walk, bend, and care for herself.

47.    Plaintiff is and was disabled within the meaning of the ADAAA.

48.    Plaintiff is and was able to perform the essential functions of her job with or without reasonable accommodation.

49.    Plaintiff requested an accommodation for her disability.

50.    Defendant discriminated against Plaintiff.

51.    Defendant retaliated against Plaintiff because of her requested reasonable accommodation.

52.    Plaintiff's disability or perceived disability was a motivating factor in such discrimination.

53.    Plaintiff's protected activity was a motivating factor in Defendant's retaliation and termination.

54.    Defendant, by its representatives' actions, willfully, maliciously, and intentionally, with reckless indifference to the rights of Plaintiff, discriminated against plaintiff in violation of the ADAAA, and by doing so are subject to punitive damages.

55.    As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to, mental and

7

emotional distress; humiliation; fear; embarrassment; lost enjoyment of life; and lost wage, lost benefits, and other emoluments of employment.

WHEREFORE, Plaintiff Jamie Borman demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for appropriate equitable relief, for punitive damages, for interest as allowed by law, for attorneys' fees, for the costs of this action, and for such other relief as may be just in the circumstance and consistent with the purposes of the ADAAA.

## COUNT II
## VIOLATION OF THE NEBRASKA FAIR EMPLOYMENT PRACTICE ACT
## DISABILITY DISCRIMINATION AND RETALIATION

56.     Plaintiff repleads paragraph 1 to 55.

57.     Defendant is and was at all times material an "employer" within the meaning of the Nebraska Fair Employment Practice Act ("NFEPA").

58.     Plaintiff's health condition substantially interfered with the operation of her musculoskeletal system.

59.     Plaintiff's health condition substantially limited her ability to lift, walk, bend, and care for herself.

60.     Plaintiff is and was disabled within the meaning of the NFEPA.

61.     Plaintiff is and was able to perform the essential functions of her job with or without reasonable accommodation.

62.     Plaintiff requested an accommodation for her disability.

63.     Defendant discriminated against Plaintiff.

64.     Defendant retaliated against Plaintiff because of her requested reasonable accommodation.

8

65.     Plaintiff's disability or perceived disability was a motivating factor in such discrimination.

66.     Plaintiff's protected activity was a motivating factor in Defendant's retaliation and termination.

67.     Defendant, by its representatives' actions, willfully, maliciously, and intentionally, with reckless indifference to the rights of Plaintiff, discriminated against plaintiff in violation of the NFEPA, and by doing so are subject to punitive damages.

68.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to, mental and emotional distress; humiliation; fear; embarrassment; lost enjoyment of life; and lost wage, lost benefits, and other emoluments of employment.

WHEREFORE, Plaintiff Jamie Borman demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for appropriate equitable relief, for punitive damages for the benefit of the common schools fund, for interest as allowed by law, for attorneys' fees, for the costs of this action, and for such other relief as may be just in the circumstance and consistent with the purposes of the NFEPA.

**COUNT III**
**VIOLATION OF PUBLIC POLICY**
**WORKER'S COMPENSATION RETALIATION**

69.     Plaintiff hereby repleads paragraphs 1 to 68 as if fully set forth herein.

70.     Plaintiff was injured at work in the course of performing her job duties.

71.     Plaintiff filed a worker's compensation claim for her work injury.

72.     It is against the public policy of Nebraska to discriminate and retaliate against employees who file worker's compensation claims.

73.     Defendant retaliated against Plaintiff for her protected activity in violation of the Nebraska's public policy.

74.     Plaintiff's protected activity was a motivating factor for Defendant's retaliation and Plaintiff's termination.

75.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to, mental and emotional distress; humiliation; fear; embarrassment; lost enjoyment of life; and lost wage, lost benefits, and other emoluments of employment.

WHEREFORE, Plaintiff Jamie Borman demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for appropriate equitable relief, for punitive damages for the benefit of the common schools fund, for interest as allowed by law, for attorneys' fees, for the costs of this action, and for such other relief as may be just in the circumstance and consistent with the purposes of the public policy of Nebraska.

**COUNT IV**
**VIOLATION OF THE FAMILY MEDICAL LEAVE ACT**
**(DISCRIMINATION, AND RETALIATION)**

76.     Plaintiff repleads paragraph 1 to 75.

77.     Defendant is and was at all times material an "employer" within the meaning of the FMLA

78.     Plaintiff is and was at all times material an "eligible employee" within the meaning of the FMLA

79.     Plaintiff suffered from one or more "serious health conditions" within eh meaning of the FMLA.

80.     Plaintiff was entitled to protected leave pursuant to her rights under the FMLA.

81.     Defendant invoked her right to leave under the FMLA.

82.     Defendant discriminated against and retaliated against Plaintiff for exercising her rights under the FMLA and terminated her for exercising her rights under the FMLA.

83.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate her for her injures and damages, for liquidated damages, for prejudgment and post-judgment interest, for attorney's fees, for the costs and expenses of this actions, for equitable relief, and for such other relief as may be just in the circumstances and consistent with the purpose of the Family Medical Leave Act.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury in Douglas County, Nebraska.

Dated this 11th day of April, 2019.

JAMIE BORMAN, Plaintiff

BY:    /s/ Kelly K. Brandon
          Kelly K. Brandon, #20734
          Stephanie J. Costello, #26309
          Fiedler Law Firm, P.L.C.
          20615 Highway 370
          Gretna, NE  68028
          402-316-3060
          402-513-6501 (F)
          kelly@employmentlawnebraska.com
          stephanie@employmentlawnebraska.com

          Attorneys for Plaintiff

# Certificate of Service

I hereby certify that on Friday, April 12, 2019 I provided a true and correct copy of the Amended Complaint to the following:

Renaissance Financial Corporation service method: No Service

Borman,Jamie, represented by Stephanie Jeanne Costello (Bar Number: 26309) service method: Electronic Service to stephanie@employmentlawnebraska.com

Signature: /s/ Kelly K. Brandon (Bar Number: 20734)

| Image ID:<br>D00603477D01 | **SUMMONS** | Doc. No.   603477 |
|---|---|---|

IN THE DISTRICT COURT OF Douglas COUNTY, NEBRASKA
        1701 Farnam
        Omaha                    NE 68183


Jamie Borman v. Renaissance Financial Corporation

                                        Case ID: CI 19      629


TO:  Renaissance Financial Corporation

                                        **FILED BY**
                                Clerk of the Douglas District Court
                                            04/12/2019

You have been sued by the following plaintiff(s):

    Jamie Borman


Plaintiff's Attorney:   Kelly K Brandon
Address:                20615 Highway 370
                        Gretna, NE 68028

Telephone:              (402) 316-3060

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.


Date: APRIL 12, 2019      BY THE COURT: *John M. Friend*
                                            Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        Renaissance Financial Corporation
        c/o CSC-Lawyers Inc Serv Co
        233 South 13th St, Ste.1900
        Lincoln, NE 68508

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.

| | SERVICE RETURN | Doc. No.    603477 |
|---|---|---|

Douglas District Court
1701 Farnam
Omaha              NE 68183

To:
Case ID: CI 19      629 Borman v. Renaissance Financial Corporat

Received this Summons on _____,_____.  I hereby certify that on

_____, _____ at _____ o'clock ___M. I served copies of the Summons
upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return      $ _____

Copy                        _____

Mileage ____miles          _____

    TOTAL            $ _____

Date: _____    BY: _____
                                              (Sheriff or authorized person)

# CERTIFIED MAIL
# PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

                                    _____

Postage $ _____    Attorney for: _____

The return receipt for mailing to the party was signed on _____,_____.

To: Renaissance Financial Corporation      From:  Kelly K Brandon
    c/o CSC-Lawyers Inc Serv Co                    20615 Highway 370
    233 South 13th St, Ste.1900                    Gretna, NE 68028
    Lincoln, NE 68508

# ATTACH RETURN RECEIPT & RETURN TO COURT

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI190000629
Transaction ID: 0008542988
Filing Date: 04/23/2019 09:29:55 AM CDT

**SERVICE RETURN**

Douglas District Court
1701 Farnam
Omaha            NE 68183

To:
Case ID: CI 19    629 Borman v. Renaissance Financial Corporat

...that on
...Summons

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _Mue_    ☐ Agent  ☐ Addressee<br>B. Received by *(Printed Name)*    C. Date of Delivery<br>_Max Stegwic_<br>D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| 1. Article Addressed to:<br>Renaissance Financial Corporation<br>c/o CSC-Lawyers Inc. Serv Co<br>233 South 13th St. Ste 1900<br>Lincoln, NE  68508 | [postmark] JOBS LINCOLN NE 6850<br>APR 17 2019 USPS |
| [barcode]<br>9590 9402 4077 8092 3790 95 | 3. Service Type<br>☐ Adult Signature<br>☐ Adult Signature Restricted Delivery<br>☒ Certified Mail®<br>☐ Certified Mail Restricted Delivery<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery<br>☐ Insured Mail<br>☐ Insured Mail Restricted Delivery (over $500) | ☐ Priority Mail Express®<br>☐ Registered Mail™<br>☐ Registered Mail Restricted Delivery<br>☒ Return Receipt for Merchandise<br>☐ Signature Confirmation™<br>☐ Signature Confirmation Restricted Delivery |
| 2. Article Number *(Transfer from service label)*<br>7018 0680 0000 0015 3636 | |
| PS Form 3811, July 2015 PSN 7530-02-000-9053 | Domestic Return Receipt |

Date: _____    By: _____
                                    (Sheriff or authorized person)

## CERTIFIED MAIL
## PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _Renaissance Financial Corporation_

At the following address: _c/o CSC- Lawyers Inc. Serv Co._
_233 South 13th St.  Ste 1900_
_Lincoln, NE 68508_

on the _15th_ day of _April_    _2019_, as required by Nebraska state law.

_/s/ Kelly K. Brandon_
Postage $ _7.10_    Attorney for: _Plaintiff Jamie Borman_

The return receipt for mailing to the party was signed on _April 17, 2019_.

To: Renaissance Financial Corporation          From: Kelly K Brandon
    c/o CSC-Lawyers Inc Serv Co                       20615 Highway 370
    233 South 13th St, Ste.1900                       Gretna, NE 68028
    Lincoln, NE 68508

# ATTACH RETURN RECEIPT & RETURN TO COURT

# Certificate of Service

I hereby certify that on Monday, April 22, 2019 I provided a true and correct copy of the Return-Summons/Alias Summons to the following:

Renaissance Financial Corporation service method: No Service

Borman,Jamie, represented by Stephanie Jeanne Costello (Bar Number: 26309) service method: Electronic Service to stephanie@employmentlawnebraska.com

Signature: /s/ Kelly K. Brandon (Bar Number: 20734)